

**Jeffrey R. Maguire**, Esq., Partner    o: (212) 939-7229    f: (212) 531-6129
a: 445 Hamilton Avenue, Suite 1500, White Plains, NY 10601
e: jmaguire@stevensonmarino.com

April 18, 2025

<u>Via ECF</u>
The Honorable Sarah Netburn
United States Magistrate Judge for the
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *Sporer v. German Kitchen Center LLC et al.*
              <u>Docket No.: 24-cv-8112-SN</u>

Dear Judge Netburn:

      This firm represents Plaintiff Carmit Sporer in the above-referenced action involving Plaintiff's wage claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against German Kitchen Center LLC, and Mayan Metzler (collectively as "Defendants," and together with Plaintiff as "the Parties"). We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of Plaintiff's claims as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). A copy of the Parties' fully-executed settlement agreement is attached hereto as **Exhibit 1.**

**I.**      <u>**RELEVANT PRELIMINARY STATEMENT**</u>

      On October 25, 2024, Plaintiff filed this action against Defendants. *See* Dkt. No. 1. On February 25, 2025, the Parties participated in private mediation with M. Salman Ravala, a mediator with extensive wage and hour experience. *See* Dkt. No. 15. As a result of the mediation, the Parties reached settlement in principle to resolve the matter in full for $50,000.00. Based on Defendants' financial situation, the Parties agreed to an initial payment of $25,000.00, with the remaining balance of $25,000.00 to be paid in equal monthly payments over the course of ten months.

      Additionally, Plaintiff's counsel respectfully submits an application for one-third of the net settlement amount, after deduction of counsel's litigation expenses, as attorneys' fees. Plaintiff's counsel incurred $2,760.00 in litigation expenses and seeks $15,746.67 in attorneys' fees.

The Honorable Sarah Netburn
April 18, 2025
Page 2 of 6

For the following reasons, the Court should approve the Parties' settlement of Plaintiff's FLSA claims as fair and reasonable.

## II.   THE AGREEMENT IS FAIR AND REASONABLE

FLSA claims may be settled and dismissed with prejudice under Rule 41 if such settlement is approved by the Court. *Cheeks*, 796 F.3d at 206-07. Courts approve FLSA settlements "when they are reached as a result of contested litigation to resolve bona fide disputes." *Flores v. Hill Country Chicken NY, LLC*, 2018 WL 2389076, at *2 (S.D.N.Y. May 25, 2018) (citing *Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Chowdhury v. Brioni Am., Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*.

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id*.

### A.   Range of Possible Recovery

In her Complaint, Plaintiff alleges that Defendants hired Plaintiff to work as a kitchen designer in September 2017. Plaintiff worked in this role until her termination on July 1, 2023. As a kitchen designer, Plaintiff alleges that Defendants required her to assist customers with their kitchen projects and make sales on items for the kitchen projects, including cabinets and appliances. Plaintiff further alleges that she worked in the Company's showroom located in New York, New York on a full-time basis from 9:00 a.m. to 5:00 p.m. from September 2018 until the Covid-19 pandemic resulted in a hybrid schedule.

From March 2020 until July 1, 2023, Plaintiff alleges that Defendants required Plaintiff to work three days in the showroom and work the other two days remote. During this time, Plaintiff alleges Defendants required her to work from 10 a.m. until 4:00 p.m. in the showroom, and she continued to work from 9:00 a.m. until 5:00 p.m. on days that she worked remotely, resulting in thirty-four hours worked each week.

For her work until March 2020, Defendants paid Plaintiff $2,600 per month plus commission. Following Defendants' change to a hybrid schedule for its kitchen designers in March 2020, they began paying Plaintiff by commission only. As a result, for the numerous weeks that Plaintiff did not earn commission, Plaintiff alleges that Defendants failed to pay her at any rate for the hours that she worked, in gross violation of the federal and state minimum wage laws.

Moreover, Plaintiff alleges that Defendants failed to pay Plaintiff her lawfully owed commission on two projects. Based on her estimates, Plaintiff was owed $9,856.60 in commission on one project and $12,531.00 on the other project, resulting in unpaid commission in the amount of $22,387.60. Under NYLL § 191-c, Defendants additionally owe Ms. Sporer $22,387.60 in liquidated damages.

Lastly, Defendants failed to provide Plaintiff with wage statements on each payday that accurately listed her regular and overtime rates of pay or her hours worked as NYLL § 195(3) requires. This results in a statutory violation under NYLL § 198(1-a) of $5,000.00.

In response, Defendants contended that Plaintiff worked as an independent contractor following the pandemic. Defendants additionally provided time records that contested Plaintiff's alleged hours worked.

Plaintiff calculated her overtime damages to be $39,707.14, which assumes 170 weeks worked that Plaintiff failed to receive one and one-half the minimum wage. Plaintiff calculated her NYLL minimum wage damages to be $22,387.60. In total, Plaintiff's best day was calculated to be $62,094.74 in actual damages under the FLSA and the NYLL, with liquidated damages equivalent to the actual damages. In sum, Plaintiff's best day was calculated to be $129,189.49. A copy of the damage calculations is attached as **Exhibit 2**.

According to these damages, Plaintiff's recovery of $50,000.00 represents approximately 38.7% of Plaintiff's maximum recovery of her damages, including liquidated damages. Courts have found that settlements exceeding 25% of maximum possible recovery to be reasonable, highlighting the fairness of this agreement under *Cheeks*. *See Lesser v. TIAA Bank, FSB*, 2020 WL 6151317, at *2 (S.D.N.Y. Oct. 20, 2020); *Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances).

Based on the records provided by Defendants, Plaintiff's best possible recovery was likely substantially less than her maximum recovery based on her allegations. This is because there were multiple weeks that she worked less than forty hours, which she did not contest. Thus, as discussed at the mediation, $50,000 represented a substantial portion of the money she was owed based on the damages she could likely prove at trial. Accordingly, the Parties submit that this agreement is both fair and reasonable.

The Honorable Sarah Netburn
April 18, 2025
Page 4 of 6

### B. Avoidance of Burdens, Expenses, and Litigation Risks

Further, settling at this stage "avoids the risks and burdens of litigation . . . as well as the costs, uncertainties, and delays inherent in litigation of this nature." *See Lesser*, 2020 WL 6151317, at *2. Indeed, were a settlement not reached at this stage, the Parties would have then proceeded with litigation. Should that have happened, Plaintiff would have faced the risk of: (1) Defendants being unable to withstand the judgment; and (2) Defendants succeeding on their affirmative defense of Plaintiff being an independent contractor. Indeed, as Plaintiff was aware of Defendants' financial hardships, Plaintiff was inclined to avoid the risk of costly litigation.

Following litigation, the parties would most likely engage in motion practice, and then would likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal. Inevitably, this would result in a delayed resolution of Plaintiff's claims at an even greater expense, potentially leaving her with only a judgment to attempt to collect upon. This settlement eliminates all of those burdens, costs, and risks, which in totality weighs in favor of approval of the settlement.

### C. Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions

As detailed herein, this settlement was reached before motion practice and trial. Both sides realized that continued litigation would not be in the best interests of any party involved, and as a result of that recognition, the negotiations were aggressively pursued on both sides to come to a fair and reasonable compromise. Indeed, the fact that the parties' settlement was reached through the assistance of an experienced mediator strongly indicates a fair and reasonable settlement.

Furthermore, the parties' agreement does not contain a confidentiality clause, a general release, or an overly broad non-disparagement clause. *See Ream v. Berry-Hill Galleries, Inc.*, 2020 WL 8514826, at *2-3 (S.D.N.Y. Dec. 4, 2020) (citing *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *5 (S.D.N.Y. 2015)). Plaintiff also requests that the Court retain jurisdiction over this matter for the sole purpose of enforcing the terms of the settlement agreement and entering judgment in accordance therewith should it become necessary.

### III. <u>ATTORNEYS FEES AND COSTS ARE ALSO REASONABLE</u>

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Thallapaka v. Sheridan Hotel Assocs. LLC*, 2015 WL 5148867, at *2 (S.D.N.Y. Aug. 17, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely

affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, Plaintiff's counsel's request that the Court approve fees of one-third of the net settlement is "consistent with the trend in this Circuit." *Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Here, Plaintiff's counsel's requested fee of $15,746.67, or one-third of the net settlement, is wholly reasonable and consistent with that law.

Moreover, the reasonableness of these fees is further solidified by applying the lodestar method as a cross check to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); Indeed, "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fee FLSA cases." *Sakiko Fujiwara*, 58 F. Supp. 3d at 439.

In order to conduct the lodestar crosscheck, Plaintiff's counsel multiplied the attorney hours spent on the case by the attorney's reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Jeffrey R. Maguire, a Partner at the Firm with sixteen years' experience would seek $400.00 per hour. "Courts within this District generally approve rates of $300-$400 per hour for partners in FLSA cases." *Mobley v. Five Gems Mgmt. Corp.*, 2018 WL 1684343, at *4, n.7 (S.D.N.Y. Apr. 6, 2018).

The Firm expended approximately 28.1 attorney hours and calculated its lodestar to be $11,240.00. Thus, the Firm's requested fee of $15,746.67 requires a multiplier of less than 2. Accordingly, Plaintiff's attorneys' fees are reasonable in light of the risk associated with a contingent fee FLSA case. Plaintiff's counsel's contemporaneous billing records are attached as **Exhibit 3**.

Lastly, with respect to expenses, the Firm is seeking reimbursement for $2,760.00 in out-of-pocket expenses, comprised of the filing fee, service, mediation, and postage. Plaintiff's counsel's expense statement is attached as **Exhibit 4**.

## IV.   CONCLUSION

In light of the foregoing, the Parties respectfully request that the Court approve their settlement of Plaintiff's FLSA claims, while retaining jurisdiction for the sole purpose of enforcing

The Honorable Sarah Netburn
April 18, 2025
Page 6 of 6

the Parties' agreement and entering judgment in the event of a breach in accordance with the agreement's terms. A proposed stipulation and order of dismissal are attached hereto as **Exhibit 5**.

    Respectfully submitted,

    Jeffrey R. Maguire
    Stevenson Marino LLP